No. 13-2269

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
-----------------------------------
MICHAEL ALLAN MCNEIL

Plaintiff-Appellant

v.

V. PETER MARKUSKI, JR.

Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
_____

INFORMAL BRIEF OF V. PETER MARKUSKI, JR., AS APPELLEE

_____

JEFFREY W. BERNSTEIN, Esquire
Goozman, Bernstein & Markuski
9101 Cherry Lane, Suite 207
Laurel, Maryland  20708
(301) 953-7480

Attorney for Appellee

0

# <u>TABLE OF CONTENTS</u>

PAGE

I.      STATEMENT OF THE CASE AND STATEMENT OF FACTS. .    1

      A.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

      B.    Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

II.     ISSUES FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

      A.    Is a Debtor in Bankruptcy Who Filed Objections to the
            Secured and Priority Status of a Creditor's Claims Entitled
            to have the Issues Relitigated in an Adversary Proceeding
            After the Bankruptcy Court Held an Evidentiary Hearing on
            the Objection and Entered an Order Determining the Priority
            Of the Clam and Overruling the Objections?. . . . . . . . . . . . .    6

      B.    Do Attorney Fees Awarded for the Services Provided to the
            Debtor's Minor Children in a Domestic Relations Case
            Constitute a Domestic Support Obligation as Defined in
            11 U.S.C. §101(14(A) and Entitled to Priority Status?. . . . . .    6

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

      A.    McNeil's Failure to File an Adversary Proceeding
            Was Harmless Error and he Would not be Entitled to
            Relitigate the Same Objections in an Adversary Proceeding . .    7

      B.    The Best Interest Attorney Fees Awarded to Markuski by
            The Circuit Court in the Domestic Litigation for
            Representing McNeil's Minor Children Constituted a
            Domestic Support Obligation. . . . . . . . . . . . . . . . . . . . . . . .. .    13

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    App. 1-3

i

# TABLE OF CASES/STATUTES

**PAGE**

*Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940) (5th Cir. 1992) . . . .   17

*Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589, 594 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Hamlet v. Ocwen Federal Bank*, 286 B.R. 835, 838 (Bank. W.D. Va., 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Holiday v. Kline (In Re Kline)*, 65 F.3d 1 (8th Cir. 1995) . . . . . . . . . . .   17

*Hoult v. Hoult*, 57 F.3d 1, 6 (C.a. 1 (1995). . . . . . . . . . . . . . . . . . . . . .   11

*In Re: Anderson*, 463 B.R. 871 (N.D., Ill. 2011). . . . . . . . . . . . . . . .   13, 22, 23

*In Re: Bunes* (Bankr. W.D. MO., 2009) . . . . . . . . . . . . . . . . . . . . . . . .   21

*In Re: Burnes*, 405 B.R. 654 (Bankr. W.D. MI, 2009) . . . . . . . . . . . .   20, 22

*In Re: Coleman*, 37 B.R. 120 (Bankr. W.D. 1984). . . . . . . . . . . . . . . . .   22

*In Re: Dides*, 2006 WL 4667126 (Bankr. D. Md. 2006). . . . . . . . . . . .   9

*In Re: E-Z Serve Convenience Store*, 318 B.R. 631 (Bank. M.d. NC, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*In Re: Dinicola*, 2011 WL 3759468 (Bankr. ND,OH 2011) . . . . . . . .   20, 23

*In Re: Elkin*, 2012 WL 5844970 (S.D., FL 2012). . . . . . . . . . . . . . . . .   16

*In Re: Jones*, 9 F.2d 878 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . .   18

*In Re: Kassicieh*, 467 B.R. 445 (S.D. OH., 2012), affd. 482 B.R. 190 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 21

ii

*In Re: Kmart Corp.*, 290 B.R. 601 (Bankr. N.D. Ill., 2002) . . . . . . . .  8, 9

*In Re: Knox*, 2007 WL 1541957 (E.D. Tenn. 2007). . . . .  . . . . . . . .  20

*In RE: Levin*, 306 B.R. 158 (Bankr. D. Md., 2004). . . . . . . . . . . . . .  15, 21

*In Re: Manard-Hester*, 2009 WL 25001142 (Bankr. D. NE., 2009). .  21

*In Re: Mitchell*, 2013 WL 2422694 (Bankr. N.D., Ill., 2013). . . . . . .  22

*In Re: Morris*, 454 B.R. 6003 (Bankr. N.D., Texas 2010). . . . . . . . .  21, 22

*In Re: Ofra Corp. of Philadelphia*, 170 B.R. 257 (Bankr. E.D. Pa.,
   1994). .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*In Re: Pagels*, 2011 WL 577377 (E.D. Va., 2011) . . . . . . . . . . . . . .  20

*In Re: Pennington*, 2011 WL 6210279 (W.D. Na 2011). . . . . . . . . . .  19

*In Re: Phegley*, 443 B.R. 154 (BAP 8th Cir. 2011) . . . . . . . . . . . . . .  22

*In re Rehkow*, 206 WL 6811011 (BAP, 9th Cir. 2006. . . . . . . . . . . . .  16

*In Re: Service Merchandise Co., Inc.*, 256 B.R. 755
   (Bankr. M.D. Tenn. 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*In Re: Stevens*, 436 B.R. 107, 109 (Bankr. W.D. WI. 2010) . . . . . . . .  13, 22

*Kontrick v. Ryan*, 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d
   867 (2004) *Id. 540 U.S. at 1377, 1378* . . . . . . . . . . . . . . . . . . . . . . .  11

*Miller v. Gentry (In re Miller)*, 55 F.3d 1487 (19th Cir. 1995). . . . . . .  17

*Pauley v. Spong (In Re Spong)*, 661 F.2d 6 (2d Cir. 1981). . . . . . . . .  17

*Petroff v. U.S.*, 2006 W.L. 18307, (Bankr. D. Md., 2006). . . . . . . . . .  7

*Silansky v. Brodsky, Greeblatt and Renehan*, 897 F.2d 743)
   (C.A. 4, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Stark v. Bishop*, 149 F.3d 1167 (4th Cir. 1998). . . . . . . . . . . . . . . . . . .   16

*Stuton v. Blaemire*, 229 B.R. 665 (Bankr. D. Md., 1999) . . . . . . . . . .   14, 15

*Ting v. Chang (In re Chang)*, 163 F.3d 1138 (9th Cir. 1998). . . . . . . .   17

*Trust Corp. v. Patterson*, 918 F.2d 1404, 1406-1407 (9th Cir. 1990). .   9

*Tully v. Cannonsburg Environmental Assoc*, 72 f.3d 1260)
 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367 (2009). .   9, 10, 11

**<u>Statutes</u>**:

Pre-2005 Bankrutpcy Abuse Prevention Consumer Protection Act

11 U.S.C. §523(a)(5)

11 U.S.C. §507(a)(7)

Post-2005 Bankruptcy Abuse Prevention Consumer Protection Act

11 U.S.C. §507(a)(1)(A)

11 U.S.C. §523(a)(5)

11 U.S.C. §101(14A)

11 U.S.C. §1322(a)(2)

Fed. R. Bank P. 7001

Fed. R. Bank P. 7001(6)

MD Code, Family Law §1-202

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
------------------------------------
No. 13-2269

MICHAEL ALLAN MCNEIL

Plaintiff-Appellant

v.

V. PETER MARKUSKI, JR.

Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
_____

INFORMAL BRIEF OF V. PETER MARKUSKI, JR., AS APPELLEE

_____

# I.   STATEMENT OF THE CASE AND STATEMENT OF FACTS

## A.   Factual Background.

**O**n November 14, 2008, Sara McNeil filed for divorce against the Debtor, Michael Allan McNeil ("McNeil" or "Debtor"), in the Circuit Court for Howard County, Maryland, in Case No. 13-C-08-07524 (the "Domestic Litigation").  The Domestic Litigation involved contested issues relating to the custody, visitation, and support of Sara and Michael McNeil's two (2) minor children (the "Children").

1

V. Peter Markuski, Jr. ("Markuski"), an attorney with over thirty (30) years of experience in domestic law, was appointed by the Circuit Court as the Best Interest Attorney ("BIA") of the McNeil's' two (2) minor children. The Court Order appointing Markuski as BIA provided that the Debtor and his spouse were to pay the fees and costs of the BIA as apportioned by the Court as the case proceeded. (DE1 No. 21)[1]

The Domestic Litigation, which is still ongoing after over five (5) years, has been unusually contentious on matters involving the Children with the Debtor having filed over thirteen (13) motions to have Mrs. McNeil held in contempt on a myriad of issues involving the Children, including visitation, custody, and access to school and medical records (all substantially denied), numerous motions relating to child support, and multiple motions to have both Markuski and the presiding Judge removed from the case. Mr. McNeil has appealed almost every ruling of the Circuit Court over the past five (5) years, all of which have been denied. As BIA, Markuski had to participate in all aspects of the Domestic Litigation that involved the Children, and had to dedicate an inordinate amount of time attempting to support and protect the minor children's interest.

Prior to the date the Debtor filed bankruptcy, May 10, 2012, (the "Petition Date") the Circuit Court for Howard County, Maryland, had ordered Mr. McNeil

_____

[1] References to ("DE1 No. __ at p. ___" refers to Docket Entry No. 1 of the District Court record, then to number of the designated pleading or Exhibit in DE1, and last to the page numbers of the specific pleading or Exhibit.

2

to pay Markuski $52,207.90 in BIA fees, representing the Court determined prorata share of the total fees incurred by Markuski in representing the Children. The award of fees were reduced to judgments, and as of the Petition Date, a balance of $47,936.81 remained unpaid, and which constituted the basis for Markuski's Claim No. 3 filed in McNeil's Bankruptcy Case.  Claim No. 3 was filed both as a domestic support obligation and as a  secured claim.  ( DE1 No. 52)

Markuski also filed a second claim, Claim No. 4, for $18,102.53, asserting status as a Domestic Support Obligation.  (DE1 No. 53)  In the Circuit Court Domestic Litigation Markuski would periodically submit a petition to the Court for his fees as BIA supported by detailed time records.  The Circuit Court, in prorating the BIA fees between Mr. McNeil and his wife, considered the financial needs and resources of the parties and the reason for the need of the services of the BIA. (DE1 No. 24 at pp. 14-16, DE1 No. 24 pp. 82-85)  Claim No. 4 was filed as a contingent claim and included those fees claimed by Markuski in his capacity as BIA for work performed prior to the Petition Date, but which had not yet been prorated and approved by the Circuit Court.

Judge Quarles, of the District court, in his Memorandum Opinion (DE 9) provides an excellent recitation of the underlying facts based on his very thorough review of the Circuit Court's Opinions, Memorandums, and Orders in the Domestic Litigation.  (DE9)

**B.    Procedural Background.**

On May 10, 2012, McNeil filed, in the United States Bankruptcy Court for the District of Maryland, for protection under 11 U.S.C. Chapter 13.  Markuski filed the aforesaid Claims Nos. 3 and 4, asserting the fees awarded as the Best Interest Attorney in the Domestic Litigation constituted Domestic Support Obligations as defined in 11 U.S.C. §101(14A).  (DE1 Nos. 52 and 53)  McNeil filed an Amended Chapter 13 Plan of Reorganization treating Markuski's claims as unsecured claims and not as priority Domestic Support Obligations.  (DE1 No. 31)

The Debtor filed an objection to Markuski's Claim No. 3 asserting the claimed fees awarded in the Domestic Litigation were procured by fraud, did not constitute child support, was not a secured debt, along with various challenges to the Circuit Court's authority to award the fees.  Markuski filed a response to both McNeil's Objection and an Opposition to the Confirmation of Plan, and on September 25, 2012, the Bankruptcy Court (Judge Rice, Presiding) held an evidentiary hearing on Debtor's Objections to the claims, and the Confirmation of Debtor's Amended Chapter 13 Plan.  At the hearing, Mr. McNeil attempted to challenge the underlying validity of the Circuit Court awards, and asserted the Circuit Court judgments were not secured debts and did not constitute awards of child support and, therefore were not Domestic Support Obligations entitled to priority.  At the hearing, both the Debtor and Markuski presented evidence and had

4

ample opportunity to present argument, and the Court had before it all the pertinent Circuit Court Orders and Memorandum from the Domestic Litigation relating to Markuski's appointment as BIA and the basis for award of fees to Markuski in his capacity as BIA. (DE1 Nos. 21, 23-25) The Court, from the bench, overruled the Debtor's Objection, denied confirmation of the Amended Chapter 13 Plan, and ruled that both of Markuski's claims constituted a Domestic Support Obligation and Claim No. 3 was secured to the extent the Debtor had an interest in certain real property in Howard County, Maryland, and subsequently an Order was entered consistent with the rulings from the Bench. (DE Nos. 42, 43)[2]

McNeil filed a Motion to Reconsider the Bankruptcy Court's Order overruling his objections to Markuski's Claims and denial of confirmation of his Amended Chapter 13 Plan. (DE No. 44) In the Motion to Reconsider, McNeil, among the many errors claimed, again asserted Markuski's claims were not a Domestic Support Obligation. Judge Rice, in denying the Motion to Reconsider, highlighted he had considered all of the evidence presented at the earlier hearing and the arguments of all the parties, and succinctly summarized his prior rulings as follows:

> Confirmation of the amended plan was again opposed by the chapter 13 trustee, Sarah McNeil and Peter Markuski.

---

[2] Once the Court determined that Markuski's claims constituted a domestic support obligation they were entitled to priority status under 11 U.S.C. §507(a)(7), and McNeil, under §11 U.S.C. §1322(a)(2), would have been required to provide for the payment in full of the priority claim in his Chapter 13 Plan. (McNeil subsequently converted his Bankruptcy Case to Chapter 7.)

> Following the hearing held on September 25, 2012, the court determined that the amended plan – like the initial plan could not be confirmed because, among other reasons, it did not provide for payment in full of Michael McNeil's then existing pre-petition arrearages on his domestic support obligations. As the court stated in its ruling at the hearing, the amended plan did not provide funds sufficient to pay the $47,936.81 domestic support obligation claim filed by Peter Markuski and allowed by the court when it overruled Michael McNeil's objection to Claim No. 3-3 earlier during the same hearing. . . (DE1 No. 43)

McNeil noted a timely appeal to the District Court of Maryland of the Bankruptcy Court's Order overruling his objections to the classification of Markuski's Claims as secured and a Domestic Support Obligation entitled to priority under 11 U.S.C. §507(a)(1)(A). On October 10, 2013, Judge Quarles, of the United States District Court for the District of Maryland, entered an Order and Memorandum Opinion affirming the rulings of the Bankruptcy Court (DE1 Nos. 9-10), and it is from that ruling this appeal to the Fourth Circuit Court of Appeals was noted.

## II.   ISSUES FOR REVIEW

**A.   Is a Debtor in Bankruptcy Who Filed Objections to the Secured and Priority Status of a Creditor's Claim, Entitled to have the Issues Relitigated in an Adversary Proceeding after the Bankruptcy Court Held an Evidentiary Hearing on the Objection Determining the Priority of the Claim and Entered an Order Overruling the Objections?**

**B.    Do Attorney Fees Awarded Against a Debtor for the
Services Provided to the Debtor's Minor Children in
a Domestic Relations Case Constitute a Domestic Support
Obligation as Defined in 11 U.S.C. §101(14(A) and
Entitled to Priority Status?**

## III.    <u>ARGUMENT</u>

**A.    McNeil's Failure to File an Adversary Proceeding was Harmless
Error and He Would Not Be Entitled to Relitigate the Same
Objections in an Adversary Proceeding.**

McNeil, on appeal, asserts that the determination of the priority and secured

status of Markuski's claim was required to be adjudicated through an adversary

proceeding under Fed. R. Bank P. 7001.[3]  Although, admittedly McNeil could have

filed an adversary proceeding to contest the priority and secured status of

Markuski's claim, he cannot now attempt to have this Court overrule an

unfavorable ruling by asserting his own procedural error.

One of the underlying purposes of requiring certain matters relating to

creditor's claims be brought by an adversary proceeding is to accord the creditor

sufficient notice it may be deprived of an interest in property.  *Petroff v. U.S.*, 2006

W.L. 18307, (Bankr. D. Md., 2006), citing *Hamlet v. Ocwen Federal Bank*, 286

B.R. 835, 838 (Bank. W.D. Va., 2002).  The heightened notice and service

requirements of an adversary proceeding entitles a party to due process before an

---

[3] The Bankruptcy Court had ruled that Markuski's Claim No. 3 was a secured debt to the extent the Debtor had an interest in certain property located in Howard County the Debtor and was also entitled to priority as a Domestic Support Obligation.  The property, pursuant to Court Orders, entered in the Domestic Litigation, was subsequently transferred to Mrs. McNeil, thus the secured status of the claim became moot.

order binding the party will be afforded preclusive effect. *In Re: E-Z Serve Convenience Store*, 318 B.R. 631 (Bank. M.D. NC, 2004). The filing of an adversary proceeding would have been for Markuski's protection to ensure he was placed on notice McNeil was attempting to challenge both the secured and priority status of the claim. Markuski did not challenge McNeil's request to have the Court address both issues in the contested format of a motion objecting to the proof of claim.

The failure of an enumerated dispute set forth in Fed Bank R. 7001 to be filed as an Adversary Proceeding is not a jurisdictional defect, and parties can be deemed to have waived the requirement by failing to object, where no prejudice results, and parties were cognizant of and had opportunity to address issues decided by the court. *In Re: Kmart Corp.*, 290 B.R. 601 (Bankr. N.D. Ill., 2002). Courts, in determining whether the effect of a failure to initiate a matter in the form of an adversary proceeding is reversible error, have refused to elevate form over substance. Instead, the Courts look to whether the rights of the affected parties have been adequately presented and that no prejudice has arisen. *In Re: Ofra Corp. of Philadelphia*, 170 B.R. 257 (Bankr. E.D. Pa., 1994).

A party will not be deemed to have been prejudiced if in the alternate proceeding, he was afforded all the protections of an adversary proceeding, and litigated the issue before the Court or knowingly failed to litigate a Rule 7001 issue

8

which he had an opportunity to litigate. The parties must be apprised of and have a chance to address all of the issues being decided by the Court. *In Re: Service Merchandise Co., Inc.*, 256 B.R. 755 (Bankr. M.D. Tenn. 2000). (*See, In Re: Dides*, 2006 WL 4667126 (Bankr. D. Md. 2006) – trustee's error of litigating a party's ownership interest by motion and not adversary proceeding was harmless error where all parties had adequate notice and fully participated in the litigation; *Tully v. Cannonsburg Environmental Assoc.*, 72 F.3d 1260 (6th Cir. 1996) – trustee's error in obtaining declaratory relief by motion and not adversary proceeding was harmless error since opposing party participated in proceeding and had full opportunity to litigate the issue; *In Re Kmart, supra*, 290 B.R. 601 – issue of validity of a leasehold interest decided by motion and not adversary proceeding was harmless error, the parties being cognizant of the issues and had the opportunity to be heard; *Trust Corp. v. Patterson*, 918 F.2d 1404, 1406-1407 (9th Cir. 1990) – failure to hold adversary proceeding to determine validity of security interest was not reversible error where Court held *de facto* adversarial hearing).

McNeil, to support his position an adversary proceeding was mandated, cites several cases that predated the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367 (2009) which directly addresses and resolves the issue presented.

In *Espinosa, supra*, the Supreme Court, in an unanimous decision, addressed the issue of the jurisdictional and preclusive implications of failure to hold an adversary proceeding required under Rule 7001. In *Espinosa*, the Court was presented with a claim under 11 U.S.C. §523(a)(8), which mandates that before the principal or interest on a student loan can be discharged, there must be a determination of undue hardship. Determining undue hardship is to be adjudicated in an adversary proceeding under Fed. R. Bankr. Proc. §7001(6) in which a party seeking the determination must initiate by serving a summons and complaint in the adversary proceeding. However, in *Espinosa*, the Debtor did not file an adversary proceeding, and only filed a Chapter 13 Plan which was confirmed. The confirmed Plan did not provide for the payment of interest on a student loan. No adversary proceeding had been filed nor was there a finding of undue hardship. After the Debtor obtained a discharge, the student loan creditor attempted to collect the interest on the loan, claiming the debt had not been discharged and the order confirming the plan was entered in violation of its rights under the Bankruptcy Code and Rules. The creditor argued the discharge of any portion of a student loan must be brought in an adversary proceeding, therefore the confirmation of the plan was void.

The *Espinosa* Court first noted a confirmation order is a final judgment, and would only be void if there was a jurisdictional error or a violation of due process

that deprived a party of notice or the opportunity to be heard.  Although, the Court

acknowledged failure to decide the issue in an adversary proceeding was an error,

the Court held it was not determinative of the jurisdictional question, and stated:

> A judgment is not void," for example, "simply because it
> is or may have been erroneous." *Hoult v. Hoult,* 57 F.3d
> 1, 6 (C.A.1 1995)…[T]he requirement that a bankruptcy
> court make this finding in an adversary proceeding
> derives from the Bankruptcy Rules, see Rule Proc.
> 7001(6), which are "procedural rules adopted by the
> Court for the orderly transaction of its business" that are
> "not jurisdictional." *Kontrick v. Ryan,* 540 U.S. 443, 454,
> 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) Id. 540 U.S. at
> 1377, 1378.

The creditor in *Espinosa* did not, and could not, have asserted the

Bankruptcy Court did not have the authority to adjudicate the dischargeability of a

debt.  Unable to demonstrate a jurisdictional error, the student loan creditor then

urged the Court to find that the procedural failure to file an adversary proceeding

constituted a deprivation of notice and due process.  The due process argument was

also rejected since the creditor had actual notice of the filing and contents of the

plan, and did not avail itself of the opportunity to litigate the issue by objecting to

the plan.

Applying the lessons of *Espinosa*, it is evident that the Bankruptcy Court's

failure to adjudicate the status and priority of Markuski's claims in an adversary

proceeding, if required and not waived, did not render the judgments void.  The

Bankruptcy Court unquestionably had jurisdiction to adjudicate the issues before it.

11

McNeil cannot possibly claim a lack of due process or notice, because he was the one who filed the objections to Markuski's claims and filed a Chapter 13 Plan treating Markuski's claims as unsecured without priority, although Markuski's proofs of claim were filed as Domestic Support Obligations. Over four (4) months lapsed between McNeil's filing for bankruptcy and the hearing on his objections to claims and confirmation, and he took absolutely no steps to file an adversary proceeding, but instead elected to file objections to the claims in the confirmation procedures. The notice requirements of an adversary proceeding would have been for Markuski's protection, not McNeil's.

Judge Rice, at the objection and confirmation hearing, had before him the Circuit Court Order appointing Markuski, and the Circuit Court's Memorandum Opinions and Orders totaling over one hundred twenty (120) pages, setting forth in great detail the history of the Domestic Litigation, the services performed by Markuski as BIA, and a detailed explanation of the basis for the Circuit Court's award of the fees and the allocation of those fees between the Debtor and his spouse (DE1 Nos. 21, 23, 24, 25, 26). McNeil simply cannot assert the Bankruptcy Court did not have all of the necessary evidence before it to determine whether the award of the BIA fees constituted Domestic Support Obligations. It is difficult to imagine any other evidence that could have been introduced at an adversary hearing, since the Bankruptcy Court's sole function in determining the

12

nature of the fees awarded can only be fulfilled by an examination of the domestic

court's records, orders, and opinions.

Judge Quarles, in his Memorandum Opinion affirming the decision of the

Bankruptcy Court, highlighted "During both hearings on McNeil's objections to

the claims, McNeil presented evidence and legal arguments why the fee awards

were not domestic support obligations, before the Bankruptcy Court ruled against

him.  Thus, McNeil had an opportunity to be- - and was - - heard on this issue."

Judge Quarles also noted that McNeil did not raise the issue in his Motion to

Reconsider the Bankruptcy Court's ruling, and concluded the error was harmless

because "due process was given".

> **B.**     **The Best Interest Attorney Fees Awarded to Markuski by the Circuit Court in the Domestic Litigation for Representing McNeil's Children Constituted a Domestic Support Obligation.**

McNeil, in his brief, acknowledges that prior to the enactment of the 2005

Bankruptcy Abuse Prevention Consumer and Protection Act ("BAPCPA"), the

overwhelming majority of Courts throughout the country, including the

Bankruptcy Courts for the District of Maryland, held that fees awarded to attorneys

or guardians *ad litems*[4] for the representation of children in domestic cases were in

---

[4] The States throughout the country have various statutory schemes for appointing attorneys to represent children in domestic cases, and utilize different titles for the designated representative, including, but not limited to, guardian *ad litem*, best interest attorney, or child advocate.  Although the specific functions of the representative may vary from state to state, universally the representative's overriding function is to represent the best interests and welfare of the child before the court.  *See, In re: Anderson*, 463 B.r. 871 (Bankr. Ill. 2011); *In re: Stevens*, 436 B.R. 107, 109 (Bankr. W.D., WI. 2010).

13

the nature of support and maintenance, and were entitled to be treated as priority and non-dischargeable debts.

Prior to enactment of the BAPCPA, 11 U.S.C. §507(a)(7) provided priority status to:

> …claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . .[5]

Markuski had been appointed the BIA pursuant to MD Code, Family Law §1-202, authorizing a court in a case in which custody, support, or visitation is contested to appoint an attorney to represent the minor children. In *Stuton v. Blaemire*, 229 B.R. 665 (Bankr. D. Md., 1999),[6] the Court held fees owed a best interest attorney were not dischargeable. The *Blaemire* Court first analyzed the Maryland statute authorizing the appointment of a BIA, and then determined the counsel's services were rendered for the child's benefit and support, including

---

[5] The pre-BAPCPA exceptions to discharge under 11 U.S.C. §523(a)(5), relating to the dischargeability of child and spousal support included this same exact language as in §507(a)(7). Most of the pre-BAPCPA cases addressed the issue of whether a claim constituted a "debt to a spouse or child" did so in the context of the dischargeability of a claim (many of the cases were Chapter 7 cases, and priority was not at issue). Similarly, most of the post-BAPCPA cases determining whether a claim constituted a Domestic Support Obligation are also in the context of the dischargeability of claims under 11 U.S.C. §523(a)(5). Post-BAPCPA §507(a)(1)(A) addressing the priority of claims for support includes the same language required for dischargeability. Since each respective version of the Pre and Post BAPCPA Codes utilized the same exact language to define non-dischargeable and priority claims relating to support, the holdings in the dischargeability cases are equally applicable to priority cases. The applicable parallel language of the Pre and Post-BAPCPA priority and dischargeability statues are set forth in the Appendix to this Brief.
[6] The *Blaemire* decision has been routinely applied as controlling precedent by the U.S. Bankruptcy Court for the District of Maryland.

those duties relating to monetary support for the child, protecting the child's interest on issues of visitation and custody, and conducting investigations which were all inextricably intertwined with the proceeding affecting the child's welfare. Markuski performed these same duties in McNeil's contested child custody, visitation, and support case. Although in *Blaemire*, the Court recognized that the fees due the BIA were not a "claim of a debt" directly payable to a spouse or minor child, the Court citing *Silansky v. Brodsky*, *Greenblatt, and Renehan* (897 F.2d 743) (4th Cir. 1990), recognized the identity of the payee is not determinative of whether the debt is dischargeable, and the question is whether the award of fees to the BIA were in the nature of support. In ruling the debt owed directly to the BIA was not dischargeable, the court refused to provide a narrow reading of what is meant by debt to a spouse or minor for support under 11 U.S.C. 523(a)(5), and instead looked to the public policy that the payment of debts to certain classes of creditors outweighed the policy of providing the debtor a fresh start as to those non-discharged debts. The Court also noted the pertinent case law was almost unanimous in holding guardian *ad litem* fees are for the support of the child and are not dischargeable. *See also, In RE: Levin*, 306 B.R. 158 (Bankr. D. Md., 2004).

15

*Blaemire, supra*, cited this Court's unpublished opinion of *Stark v. Bishop* (*In re Stark*), 149 F.3d 1167 (4th Cir 1998).[7]  In *Bishop*, the issue presented was whether fees awarded to an attorney *ad litem* for representing the debtor's minor children were dischargeable.  The Fourth Circuit stated that the task of the Bankruptcy Court for determining the dischargeability of the debt is relatively simple:  "It must determine whether the debt is owed to a "child of the debtor, for … support of such … child, in connection with a separation agreement, divorce decree or other order of a court of record" but only to the extent that "such liability is actually in the nature of alimony, maintenance, or support."  In holding the fees owed the attorney were not dischargeable, the Fourth Circuit recognized that the identity of the payee under 11 U.S.C. §523(a)(5) was not determinative, and that the functions of the attorney in the custody case were all intended for the child's benefit and support, thus the fees constituted "support" within the meaning of §523(a)(5) and were not subject to discharge.

A common thread throughout the pre-BAPCPA cases interpreting 11 U.S.C. §507(a)(7) and §523(a)(5) is that the debtor who owes money awarded in a domestic case either to his spouse's attorney or to a best interest attorney or guardian *ad litem*, asserts the claim does not constitute a "debt  for support or maintenance to a spouse or child of the debtor", therefore is not entitled to priority

---

[7] There is no 4th Circuit published opinion on point addressing the issue presented in *Bishop*.  Local rule 32.1.  The *Bishop* decision has been cited as precedent in a number of cases, including  *In re Rehkow*, 206 WL 6811011 (BAP, 9th Cir. 2006); *In re Kassicieh*, 467 B.R. 445 (S.D., OH 2012); *In re Elkin*, 2012 WL 5844970 (S.D., FL 2012).

and is dischargeable.  The Pre-BAPCAP courts have almost unanimously rejected this argument and have  refused  to just look at whether the debt was owed directly "to a spouse or child" for support or maintenance. Instead the Courts have placed emphasis on the inquiry of whether the attorney or guardian *ad litem* fees were in the nature of support; rather than on the identity of the payee.  *See Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2d Cir. 1981) (that to hold a debt dischargeable simply because the money was payable to the spouse's attorney and not directly to the other spouse, would be to put form over substance, in contravention of established bankruptcy law); *Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589, 594 (2nd Cir. 2002) (attorneys' fees  owed  debtor's spouse not dischargeable); *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940 (5th Cir. 1992) (The   guardian *ad litem*, supplied services during the custody hearing  which was for the benefit and support of the  child, as the purpose of the hearing was to determine who could provide the best home for her, and the award of attorney fees awarded to the guardian ad litem constituted a non-dischargeable debt under § 523(a)(5) ; *Holiday v. Kline (In re Kline)*, 65 F.3d (8th Cir. 1995) (attorneys' fees owed debtor's spouse not dischargeable); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487 (10th Cir. 1995) (the debts to a guardian *ad litem* "can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding"); *Ting v. Chang (In re Chang)*, 163 F.3d 1138 (9th Cir. 1998) (both attorneys' fees of

spouse and fees of guardian *ad litem* not dischargeable); *In re Jones,* 9 F.3d 878

(10th Cir. 1993) (We hold that the term "support" as used in § 523(a)(5) is entitled

to a broad application  and a debt could be considered in "nature of support" under

federal bankruptcy law, even though it would not qualify as support under state

law, and  attorney fees and costs awarded debtor's former husband in state court

custody actions are directed towards determining which party can provide the best

home for the child and are, therefore, held for the child's benefit and support and

not dischargeable.)

    McNeil  contends that the pre-BAPCPA case law is not applicable in

construing whether attorney fees in the nature of support payable directly to an

attorney fall within the definition of a Domestic Support Obligation as defined

currently in 11 U.S.C. §101(14A).  A Domestic Support Obligation is defined :

> The term "domestic support obligation" means a
> debt that accrues before, on, or after the date of the order
> for relief in a case under this title, including interest that
> accrues on that debt as provided under applicable non-
> bankruptcy law notwithstanding any other provision of
> this title, that is—
>
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such
> child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support
> (including assistance provided by a governmental unit) of
> such spouse, former spouse, or child of the debtor or such
> child's parent, without regard to whether such debt is
> expressly so designated;

(C) established or subject to establishment before, on, or
after the date of the order for relief in a case under this
title, by reason of applicable provisions of—
(i) a separation agreement, divorce decree, or property
settlement agreement;
(ii) an order of a court of record; or
(iii) a determination made in accordance with applicable
non-bankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that
obligation is assigned voluntarily by the spouse, former
spouse, child.

11 U.S.C. §101(14A)

The United States Bankruptcy Court for the Western District of North

Carolina, in analyzing the definition of a Domestic Support Obligation, observed:

> The Bankruptcy Abuse Prevention and Consumer
> Protection Act did add a new and separate definitional
> section to the provisions dealing with domestic support
> obligations.  However, the legislative history of the Act
> reveals that its intent was to add additional groups of
> persons to which it applies, rather than to narrow the
> scope of the Court's ability to declare a domestic support
> obligation to be non-dischargeable.  There was no intent
> by Congress to disturb the rulings under well settled law
> that attorney fees are domestic support obligations.  *In
> Re: Pennington*, 2011 WL 6210279 (W.D. Na. 2011).

Federal Bankruptcy Law, not State Law, determines whether a debt is in the

nature of support.  Contrary to McNeil's assertion, the definition of a Domestic

Support Obligation under BAPCPA is a term derived from the same definitions of

a non-dischargeable and priority debt for alimony, maintenance, and support

contained in pre-BAPCPA 11 U.S.C. §523(a)(5) and §507(a)(7), therefore case law

19

construing the former §523(a)(5) and 507(a)(7) are relevant and persuasive. *In Re: Pagels*, 2011 WL 577377 (E.D. Va. 2011). Case law construing what constituted a non-dischargeable alimony, maintenance, and support under former §523(a)(5) is relevant in determining what constitutes a debt in the nature of alimony, maintenance, or support under §101(14A). *In Re: Knox*, 2007 WL 1541957 (E.D. Tenn. 2007). *See also, In Re: Burnes*, 405 B.R. 654 (Bankr. W.D. MI 2009) (the prior version of the Code did not use the term Domestic Support Obligation, however, the relevant language on this issue was essentially unchanged in BAPCPA). Ignoring prior relevant case law, McNeil argues that since guardian *ad litems* and BIA attorneys are not included within the designated payees in §104(14A), their claims are dischargeable and not entitled to priority. However, the former §523(a)(5) and §507(a)(7) similarly did not include attorneys as designated payees, and the Courts nonetheless consistently concluded that "to hold a debt dischargeable simply because the money was payable to someone other than the spouse or child, would be to put form over substance, in contravention of established bankruptcy law".

While the text of §523(a)(5) has been modified, the test to determine whether an obligation is in the nature of support remains unchanged. *In Re: Dinicola*, 2011 WL 3759468 (Bankr. ND, OH 2011). Almost every Court since the enactment of BAPCPA, has held attorney fees awarded by a Court to a BIA or

guardian *ad litem* or to the attorney of the other spouse is in the nature of support

and constitutes a Domestic Support Obligation under §104(14A).  In *Levin v.*

*Greco*, 415 B.R. 663, 667 (N.D. Ill., 2009), the Court found the rationale of the

pre-BAPCPA cases equally persuasive in holding that an attorney who is charged

with representing the child's best interest in child custody proceedings, can be said

to relate just as directly to the support of the child as attorney's fees incurred by the

parents in a custody proceeding, and that the fees awarded the attorney were in the

nature of child support of a non-dischargeable debt.  The *Greco* Court, *Id.*,

summarized that any other ruling would be putting form over substance in

contravention of established bankruptcy law.  *See also*, *the following Post-*

*BAPCPA cases*, *In Re: Manard-Hester*, 2009 WL 25001142 (Bankr. D. Ne., 2009)

- (attorney fees awarded payable directly to the attorney in a contested paternity

case held to be a Domestic Support Obligation and not discharged; *In Re: Bunes*,

(Bankr. W.D. MO., 2009) (Fees awarded directly to a guardian *ad litem*, not

dischargeable even though the attorney was not one of the persons specifically

listed in the definition of a Domestic Support Obligation as qualifying as a payee);

*In Re: Kassicieh*, 467 B.R. 445 (S.D., OH., 2012), affd. 482 B.R. 190) (6th Cir.

2012) (When state domestic relations court appoints guardian *ad litem* to protect

interests of child, services provided by guardian *ad litem* have effect of providing

support, for debt dischargeability purposes under 11 U.S.C. §101(14A)); *In Re:*

*Morris*, 454 B.R. 660) (Bankr. N.D., Texas, 2011) (the Court recognized that the majority of the Courts since the enactment of BAPCPA, have rejected the literal interpretation of a Domestic Support Obligation as applicable to 11 U.S.C. §523(a)(5), and have included within the definition of a Domestic Support Obligation, fees awarded directly to an attorney in a domestic litigation in the nature of support to a spouse or child). *In Re: Mitchell*, 2013 WL 2422694 (Bankr. N.D., Ill. 2013) (noting the majority of courts have not interpreted the payee requirement in §523(5) literally, looking instead at the nature of the debt and not to whom the debt is owed); *In Re: Phegley*, 443 B.R. 154 (BAP, 8th Cir. 2011) (Exceptions from discharge for spousal and child support deserve a liberal construction, and the policy underlying §523 favors the enforcement of familial obligations over a fresh start for the debtor, even if the support obligation is owed directly to a third party); *In Re: Stevens*, 436 B.R. 107 (Bankr. W.D., Wis. 2010), citing *In Re: Coleman*, 37 B.R. 120 (Bankr. W.D. 1984) ("The services of a guardian *ad litem* in the primary divorce proceeding, though extending beyond support to custody and visitation, are generally sufficiently connected to the core concern of the Code for protection of family obligations to except a reasonable fee for such services from discharge"); *In Re: Burnes, supra*, 405 B.R. at 659 (there is no difference in the pre-BAPCPA Code "to a spouse, former spouse, or child and BAPCPA's "owed to or recoverable by . . . a spouse, former spouse, or child"); *In*

*Re: Anderson*, 463 B.R. 871, N.D., Ill., 2011 (holding a child representative in a domestic case, like a guardian *ad litem*, can be said to relate just as directly to the support of the child as attorney fees incurred by the parents in a custody case, and fees due a child representative are a Domestic Support Obligation and not dischargeable); *In Re: Dinicola, supra*, 2011 WL 3759468 ("the Court is persuaded by the extensive post-BAPCPA case law that guardian *ad litem* fees are non-dischargeable").

Judge Quarles, in his Memorandum Opinion (DE9, pp. 17-21), affirming the Bankruptcy Court's Orders, independently reviewed the evidence, including the lengthy Memorandums and Orders of the Circuit Court awarding Markuski fees as the BIA in the Domestic Litigation (DE1 Nos. 23, 24, 25). It is uncontested that Markuski was appointed by the Circuit Court to represent the McNeil's two (2) minor children in the Domestic Litigation on March 23, 2009 (DE1 No. 21), therefore, the claim arose under a Court Order. Judge Quarles, based on his review of the record, concluded many of the functions performed by Markuski in the Domestic Litigation, were (i) to represent the children regarding visitation rights, especially since the Circuit Court was unsure what visitation McNeil should have with the children (DE9, p. 2), (ii) to address the Circuit Court's concern with McNeil's interference with his son's medical treatment and unwillingness to administer prescribed medicine (DE9, p. 2, DE1 No. 24, pp. 22-24), (iii) to

address issues regarding child support, especially in light of McNeil's failure to
properly disclose his financial information, forcing Markuski to devote more hours
than normally necessary in representing the interests of the children  (DE1 No. 9,
p. 3, DE1 No. 4, pp. 12-13, 35-40), (iv)  to address the numerous motions,
including thirteen (13) contempt motions filed against Mrs. McNeil on issues
relating to the children, including, but not limited to, visitation and the children's
medical care, and schooling (DE9, p. 4), and (v)  to address the numerous appeals
of the Circuit Court's Orders filed by McNeil on virtually every issue relating to
the children's custody, visitation, and support, none of which have succeeded to
date (DE9, p. 4).[8]  It is evident that all of Markuski's functions and services
provided the children were inextricably intertwined with the welfare, support, and
benefit of the children.  Although the State Court's categorization of the services
performed by the BIA is not controlling on the Bankruptcy Court, the Circuit Court
for Howard County, throughout its Memorandums and Orders, stated that
Markuski's fees were necessary to protect the interests of each child in the highly
conflicted domestic case (DE1 No. 24, p. 41).  The fact that the Circuit Court
weighted the respective financial abilities of both Mr. McNeil and Mrs. McNeil, in
allocating Markuski's BIA fees between the parties, further demonstrates the
award of fees were in the nature of support (DE9, p. 20, DE1 No. 23, pp. 14-16,

---

[8] As of this date, two (2) appeals are still pending before the Court of Special Appeals of Maryland, which basically
raise the same issues as previously decided and denied by the appellate court.

DE1 No. 24, pp. 82-85). All of Markuski's legal services as the BIA were sufficiently related to a child's benefit and welfare, and thus are in the nature of support, and the award of his fees constituted Domestic Support Obligations, as defined in §101(14A). Once the fees were determined to be a Domestic Support Obligation, the fees were entitled to priority under §507(a)(1)(A).

The case law before and after the enactment of BAPCPA have recognized that BIAs and guardian *ad litems* play a crucial function in protecting the interests of minor children in family courts throughout this country, which is an inseparable element of the child's support. The Courts have also consistently held that a broad reading of what is meant by support follows the public policy of the statute, and that the nature of the support is controlling rather than the identity of the payee. If BIA fees were not priority claims or dischargeable in bankruptcy, it would place a significant chill on those attorneys willing to assume the essential function of representing minor children in domestic cases, many who accept the appointment at reduced rates. The instant case is illustrative of the manifest injustice that would occur if BIA fees are determined not to constitute a Domestic Support Obligation. Mr. Markuski was appointed by the Circuit Court because the presiding Judge believed his expertise would be instrumental in representing and protecting the interests of the minor children in a violative custody case. When Mr. Markuski accepted the appointment there was no way he, or any attorney, could have

predicted the magnitude of the litigation that Mr. McNeil would thrust on the

Court.  Mr. McNeil became a virtual pleading factory, repeatedly requesting relief

denied numerous previous times, and then appealing most of the Court's ruling to

the appellate courts.[9]  Additionally, as the case progressed over the years, the

issues between the Debtor and the minor children intensified and became more

critical.  A reading of the Circuit Court Judge's Memorandum Opinions in this

case provides an excellent illustration of why children under troublesome

circumstances in contested custody, visitation, and support cases, require

independent representation to protect their interests (DE1 Nos. 23-24).

Mr. Markuski believes he had and still has an ethical duty to continue to

represent the Children in the Domestic Litigation even though McNeil failed to pay

the awarded fees as ordered by the Court.  Mr. Markuski has provided support to

the children in the broadest sense throughout the Domestic Litigation, and the fees

owed Mr. Markuski by Mr. McNeil constitute Domestic Support Objections under

11 U.S.C. §101(14A) are subject to priority under 11 U.S.C. §507(a)(1) and would

be non-dischargeable under §523(a)(5).

---

[9] The Howard County Circuit Docket is over 74 pages long, and does not include the numerous Federal and State lawsuits McNeil has filed against Markuski, the presiding Judge, social service agencies, and almost everyone else involved in the Domestic Litigation.  The Circuit Court at times has referred to many of the Motions filed by McNeil as "hastily initiated, in a reactive manner, baseless, and without substantial justification" (DE1 No. 22).

IV.    **CONCLUSION**

For the reasons set forth herein, the ruling of the United States District Court

for the District of Maryland, affirming the decision of the United States

Bankruptcy Court for the District of Maryland, holding Markuski's Proofs of

Claims constituted claims for Domestic Support Obligations and overruling

McNeil's objections to Markuski's claims, should be affirmed.


**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 8,760 words excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5)

and the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has

been prepared in a proportionately spaced typeface using Microsoft Word from

Windows/Office 2007 in 14 size front and Times New Roman.

GOOZMAN, BERNSTEIN & MARKUSKI


*/s/Jeffrey W. Bernstein*
Jeffrey W. Bernstein, Esquire
9101 Cherry lane, Suite 207
Laurel, Maryland  20708
Attorney for Appellee
(301) 953-7480
jwbernstein@gbmlawfirm.com

27

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **22<u>nd</u> day of November, 2013**, a copy of the foregoing Appellee's Brief was mailed, U.S. First Class Postage Prepaid, to the following:

Michael A. McNeil
7014 Gentle Shade Road
Apartment 402
Columbia, MD  21046

Cary C. Jacobson, Esquire
The Drazin Law Center, P.A.
10420 Little Patuxent Parkway
Suite 100
Columbia, MD  21044

Evan M. Goldman, Esquire
Goldman & Goldman, P.A.
Foxleigh Building
2330 West Joppa Road, Suite 300
Lutherville, MD  21093

U.S. Trustee's Office
101 W. Lombard Street
Suite 2625
Baltimore, MD  21201

*/s/ Jeffrey W. Bernstein*
Jeffrey W. Bernstein

28

**PRE-BAPCPA**

§ 523. Exceptions to discharge

**(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any **debt—**

**(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—**

11 USCA § 507. Priorities

**(a)** The following expenses and claims have priority in the following order:

(7) Seventh, allowed claims for **debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—**

Appendix -1-

**POST-BAPCPA**

**11 USC 523**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) for a **domestic support obligation**;


**11 U.S.C.A. § 507 PRIORITY**

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for **domestic support obligations** that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.


**11 USCA 101 DEFINITIONS**

In this title the following definitions shall apply:

(14A) The term "**domestic support obligation**" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

(A) owed to or recoverable by--

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

Appendix -2-

**(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

**(i)** a separation agreement, divorce decree, or property settlement agreement;

**(ii)** an order of a court of record; or

**(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

**(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Appendix -3-